**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action NO. 1:23-cv-1930-RMR-NRN

GS HOLISTIC, LLC,

Plaintiff,

v.

ALPHASTAR VAPES, LTD AND JIMMY O. VARGAS,

Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS**

---

On February 25, 2026, Defendants moved this court to dismiss Mr. Jimmy Vargas (the "Individual Defendant") as a defendant from this case. (ECF 50; hereinafter "Motion"). In the Motion, Defendants explained how in the Tenth Circuit, an officer or agent may be held personally liable for a corporate tort ***only*** if the officer personally directed or actively participated in the tortious conduct (or in conduct from which a tort would reasonably be expected to follow). Motion at 4 citing *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1182 (10th Cir. 1989). Defendants went on to explain how "personal liability requires specific direction or sanction of, or active participation or cooperation in, the wrongful act or omission that caused the plaintiff's injury — not merely the person's corporate title or general authority within the company." *Id.* citing *Zimmerman v. First Fed. Sav. & Loan Ass'n of Rapid City*, S.D., 848 F.2d 1047, 1052–53 (10th Cir. 1988).

Under the *Twombly/Iqbal* pleading standard which applies to motions to dismiss, this means that the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2D 868 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice; a plaintiff must offer specific factual allegations to support each claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).

So, what factual allegations that are not merely "a formulaic recitation of the elements" has GS Holistic alleged? As stated in Defendant's Motion, and uncontested in Plaintiff's Response, the Amended Complaint does **not** allege: (a) what specific act Mr. Vargas personally performed in connection with the March 22, 2023 test purchase; (b) that Mr. Vargas had any personal knowledge that the specific product was counterfeit; (c) that Mr. Vargas personally selected, ordered, or approved the purchase of the allegedly counterfeit inventory; (d) that Mr. Vargas was present at the Alphastar Vapes retail location on the date of the test purchase; (e) that Mr. Vargas had any communication with the wholesale distributor from whom the product was sourced; or (f) any other fact that would distinguish Mr. Vargas's alleged personal conduct from the ordinary activities of any business owner. Motion, 5. These facts are undisputed by Plaintiff in its response and the Motion should be granted.

**I. Plaintiff's Response is Unavailing and the Cited Cases Support Dismissal**

Plaintiff, in its Response (ECF 70), appears to argue that all that needs to be pleaded is boilerplate averments that Mr. Vargas is the owner of the store to satisfy the

pleading standard. *See e.g.,* Response at 2, 5. The cases cited by Plaintiff, however, do not stand for such broad a proposition and, indeed, appear to all be inapposite. For example, Plaintiff opens by citing numerous cases for the proposition that an employee or owner can be held liable without piercing the corporate veil. *See* Response, 3-4. This is a non-sequitur and a matter that is not disputed or at issue in Defendants' Motion.

Plaintiff then turns to citing cases where owners or employees were held liable. In each of these cases, however, it was pleaded that the individual defendant at issue engaged in **ACTUAL** personal conduct which was the predicate for his liability. For example, in *Hair Assocs. v. Nat'l Hair Replacement Servs.*, 987 F. Supp. 569, 590-91 (W.D. Mich. 1997), cited by Plaintiff, the court focuses on the "corporate officer's active participation in infringing activity." *Id.* In *Hair Assocs.,* the Court found that the individual who was being sued as a co-defendant (Mr. Hale) had personally instructed the creation of the infringing trademark. *Id.* at 589. Here, there have been no facts pleaded to support any such active participation. Likewise in *Two Men & a Truck/International v. Two Men & a Truck/Kalamazoo*, Case No. 5:94-CV-162, 1995 U.S. Dist. LEXIS 11295, at *9 (W.D. Mich. July 24, 1995), cited by Plaintiff, is in a completely different context where the court was considering whether it could issue a preliminary injunction against a franchisee and its owners Mark and Meum Mayes. *Id.* In that opinion, without any clear connection to the preliminary injunction issue, the court stated that employees could be liable based on their specific "actions". *Id.* Both of these cases are factually distinguishable from the instant case where Plaintiff has completely failed to allege that Mr. Vargas, personally, did **anything** other than simply own the store(s) in question (and

as a consequence had oversight of the store(s)). Nothing. As a result, the claims brought against Mr. Vargas personally, are precisely the sort of pure speculation that *Twombly* and *Iqbal* prohibit. As explained in the Motion, Defendants have not even affirmatively plead his participation ***at all,*** relying entirely on the “formulaic recitation” that Mr. Vargas allegedly “authorized, directed, and/or participated” in the infringement —precisely the type of legal elements that *Twombly* and *Iqbal* state that a court need not accept as true. *See Iqbal*, 556 U.S. at 678 (“[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.”). The disjunctive phrasing — "and/or" — underscores the absence of any actual factual allegation; Plaintiff does not even allege what specific act Mr. Vargas performed, only that he must have done something because he owns the company.

Plaintiff next argues that this Court should accept such legal conclusions as satisfying the pleading requirements because the Eastern District of Michigan blessed a “virtually identical” complaint. Response, 3-4 (citing *GS Holistic, LLC v. Flavorz Smoke, LLC*, No. 2:24-cv12254, 2026 U.S. Dist. LEXIS 105949, at *6-7 (E.D. Mich. May 13, 2026)). That case, however, undermines rather than supports Plaintiff’s argument. As this Court already noted, and as the *Flavorz Smoke* case highlighted, GS Holistic takes a “blunderbuss-like approach to [filing trademark-infringement] cases, effectively reigning litigation terror down upon dozens of small Colorado businesses.” *Id*. at *6; *GS Holistic, LLC v. Vaportoke Inc*., No. 23-cv-01513-RMR-NRN, 2024 U.S. Dist. LEXIS 103158, 2024 WL 2864149, at *8 (D. Colo. Apr. 30, 2024) report and recommendation adopted, 2024 U.S. Dist. LEXIS 102187, 2024 WL 2863611 (D. Colo. May 24, 2024).

This has resulted, as Plaintiff ***admits***, in the filing of complaints that are virtually identical. *See* Response, 4 (stating the *Flavorz Smoke* complaint "specifically relied on factual allegations materially indistinguishable from those pleaded here.") This is an incriminating admission that the allegations pleaded are indeed mere boilerplate and that they do not plead any factual allegations related to Mr. Vargas' actual individualized conduct.

Furthermore, as Plaintiff admits, the *Flavorz Smoke* court ***only*** allowed the individual claims to survive because it was "plausible" that, based on the owner's experience, the owner should have known that the $318 *Flavorz Smoke* product was not the genuine article which sold for $599.95. *Flavorz Smoke,* at *6 (stating GS Holistic alleged "*just* enough facts" (emphasis in original) because, due to defendant's "specialized knowledge," he should know "no authentic Stundenglass gravity infuser waterpipe would retail for only $318.00.") That is simply NOT the case here. **Here we have no such facts.** Indeed, as pleaded by Plaintiff, the Defendants were offering the product for sale at approximately its normal retail price: $599.95 or *over* that normal retail price at approximately $613.24.[1] *See* First Amended Complaint (FAC) (ECF 30), ¶

1 In a footnote to its Response brief, Plaintiff's attempts to amend its complaint—without motion, which is not permitted—to additionally aver that "the purchase price was $549.99 (approximately $50 below the authentic retail price), with sales tax of $46.75 and a credit card surcharge of $16.50 bringing the total to $613.24." Response, 4 at n.1. These additional allegations are simply NOT in the First Amended Complaint and should not be considered by the Court. *See Kilkenny v. Airbus Ams., Inc.*, Civil Action No. 25-cv-04062-PAB-SBP, 2026 U.S. Dist. LEXIS 103007, at *11 (D. Colo. May 8, 2026) ("Allegations that do not appear in the pleadings cannot be raised for the first time in a response to a motion to dismiss.") (citing *Bingaman v. Torrez*, No. 12-cv-00400-WJM-CBS, 2012 U.S. Dist. LEXIS 183361, 2012 WL 6762218, at *9 (D. Colo. Nov. 5, 2012), report and recommendation adopted, 2013 U.S. Dist. LEXIS 910, 2013 WL 50428 (D. Colo.

43. Plaintiff's Response misstates and inverts what Plaintiff actually pleaded in its FAC. Plaintiff did *not,* as Plaintiff states, plead that Defendants sold the product at issue "at a price below the authentic retail price." Response, 4. That is not alleged *anywhere* in the FAC. What is alleged in the FAC is that Alphastar sold the product "for $613.24 whereas the authentic product retails at $599.95." FAC, ¶ 43. That is, Plaintiff has pleaded that Alphastar sold the product for a bit ***more*** than its standard retail price.

**This is exactly the opposite situation as what the Court faced in *Flavorz Smoke.*** Here the pricing of the product, rather than suggesting "willful blindness" in the face of "specialized knowledge," support the exact opposite conclusion: That Alphastar believed it was indeed selling a legitimate product and was not being willfully blind. This factually diametrically opposite situation compels an opposite ruling at the motion to dismiss stage.

Ironically, immediately after arguing that Defendants cannot engage in "'ostrich-like' business practices," Plaintiff buries its own head in the sand with respect to what it actually pleaded: misstating the record and doubling down that, "[t]he allegations here—that counterfeit goods were sold at dramatically discounted prices by an experienced retail merchant—support such an inference." Response, 5. Again, there simply are no factual averments in the complaint that support anything other than the fact that Alphastar sold the product at a marginally **HIGHER** price point than the normal retail

Jan. 3, 2013) (citation omitted)).

price. The exact opposite of what Plaintiff is arguing and what was found in the *Flavorz Smoke* case.

Plaintiff has stated what it must prove at this stage of the case as follows: "GS Holistic need only plead enough factual content to permit a reasonable inference of personal participation or willful blindness." Response, 5. Defendants agree that this is indeed the right standard. As shown in Defendants' Motion, and unrebutted in Plaintiff's response, Plaintiff has failed to plead ***anything*** to support "personal participation." And, with respect to the second prong—willful blindness—here, where the product was sold at a marginally higher price point, there are simply no facts to support an argument for willful blindness like the one accepted by the Court in *Flavorz Smoke.* With neither prong plausibly pleaded, the claims against Mr. Vargas personally must be dismissed.

**II. This Court Should Not Grant Plaintiff Leave to Amend**

Plaintiff asks, almost in passing, that the Court grant it leave to amend its FAC if the Court finds that the allegations against Mr. Vargas do not meet the pleading standard. That ship, however, has sailed. This case was filed in 2023. Plaintiff has already amended its complaint once. Due to Plaintiff's own actions, no progress was made in this case in 2023 and the case then stayed for over a year. Mr. Vargas has been living as a defendant for far too long already. As this Court informed Plaintiff at the last scheduling conference, if Plaintiff wanted to amend its pleading it needed to do so by April 30, 2026—a date discussed at the scheduling conference, which Plaintiff agreed with and which Plaintiff jointly helped propose. Scheduling Order (ECF 65) at 12. Indeed, we are already past the deadline set for service of discovery (June 1, 2026). *Id.* To allow amendment now, followed by a potential subsequent round of briefing on a motion to dismiss three years into the case, is plainly not in the interest of justice. Rule 1 urges the court to interpret the rules to provide in a manner which "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Allowing another round of amendments, without good cause[2], to add additional unsupported boilerplate or cost information that could have

2 Plaintiff's Response does not recite the standard seek to meet the requisite standard for seeking to amend its complaint at this stage of the case. Perhaps that is because Plaintiff knows it cannot meet the standard when properly applied. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch v. Polaris Indus., Inc*., 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting G*orsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)). "Rule 16(b)'s 'good cause' standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. Properly construed, 'good cause' means that

been amended prior to the April 30 deadline, three years into the case—is the exact opposite of what is envisioned by Rule 1.

### III. Fees are Warranted

The parties agree that this Court may award fees under Section 1117(a) in "exceptional cases" which includes cases that stand out based on *either* (1) the substantive weakness of a party's position" **or** (2) "the unreasonable manner in which the case is litigated". Response, 6 (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Plaintiff's response then **only** addresses the first option for fees, the substantive weakness of Plaintiff's position—i.e., arguing (incorrectly, again, given pricing of the product) that other courts have held such claims to be sufficient against owners. What Plaintiff **simply does not even contest is the irrefutable fact that this case is indeed exceptional under the second prong: the unreasonable manner in which the case is litigated.** Undersigned counsel has *never,* in almost two decades of practice, had a case where the court had to issue an order to show cause because plaintiff's counsel had decided to not respond to communications from defendants. *See* ECF 12 and 22 at 2. Undersigned counsel has never before had a party like GS Holistic authorize the filing of so many cases in such a short amount of time and, as documented, file two or three lawsuits (sometimes on the same day) against the very same Defendants. ECF 22 at 2. Undersigned counsel has

scheduling deadlines cannot be met despite a party's diligent efforts." *Carroll v. Jefferson Cty. Sheriff's Office*, Civil Action No. 19-cv-02132-RM-MEH, 2020 U.S. Dist. LEXIS 66974, at *6 (D. Colo. Apr. 16, 2020). Here, it is clear whatever Plaintiff may propose by way of amendment could have been done before April 30, 2026.

never before been involved in a case where a plaintiff authorized filing initial complaints that the Court has characterized as "cookie-cutter, boilerplate" "complaints, none of which contained any meaningful individualized detail about the nature of Defendants' conduct, or any factual allegations at all that would tend to support a claims of willfulness of the alleged violation." ECF 22 at 2. Undersigned counsel has never before attended a status conference where the Court *sua sponte* brought up the spectre of Rule 11 sanctions in a colloquy with local counsel, causing local counsel to shortly thereafter withdraw from the matter. *See* ECF 22 at 2, and 27.

Undersigned counsel has never before been involved in a case where the court spent two hours (on September 26, 2023) expressing its displeasure with how Plaintiff was litigating and wherein the court had to explicitly *order* Plaintiff to comply with its Rule 16 obligation to meet and confer and to prepare proposed scheduling orders by November 17. ECF 22 at 4. And, more shockingly (despite the two-hour status conference in September), undersigned counsel has have never been involved in a case where a plaintiff continued to simply ignore the court's orders and failed to prepare proposed scheduling orders or meet with defendants as ordered—necessitating Defendants' filing of a motion to dismiss for lack of prosecution under Rule 41. *See* ECF 24. Nor has Undersigned Counsel been involved in a case where, after a subsequent order to again meet with defense counsel and to again prepare scheduling orders and to submit them by a certain date (ECF 26), where the plaintiff—again—failed to comply with the court's order, admitting to the court in its own filing that while it did file

scheduling orders, "that most, if not all, of the scheduling orders" . . . "contained mistakes." ECF 32.

It should come as no surprise that Undersigned Counsel also has never before been involved in a case where the Court was so convinced with a party's inability to litigate the case, it chose to stay—for an indefinite period of time—the bulk of the "more than 50 individual lawsuits" for over a year starting in January 2024. ECF 30. As this Court nicely put it, "[s]omething must be done to reduce the chaos and ensure that justice is served in an orderly fashion consistent with the Court's rules and orders." *Id.* at 6. In January 2024 that "something" was staying this case for a year—today, that "something" is to dismiss Mr. Vargas and to grant him his fees for suffering through something that by anyone's account must be considered an "exceptional" litigation.

June 5, 2026

*/s/ Isaac S. Crum*

Isaac S. Crum
Crum IP, LLC
111 E. Dunlap Ave.
Suite 1-258
Phoenix, AZ 85020
isaac@crumip.com
Tel: (602) 888-3383